IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LORETTA SANFORD, ANNIE                )
CRAWFORD, EDWARD BRENNAN,              )
KATHLEEN MITTELSTEADT, SUZANNE         )
MCGEE, and DEANE STOKES, JR.,          )
                                       )
     Plaintiffs,                      )
                                       )
     v.                               )      Case No. 3:04-cv-433-DRH
                                       )
AT&T CORPORATION,                      )
                                       )
     Defendant.                       )

## ORDER

    This matter is before the Court on the Agreed Motion to Extend Scheduling and

Discovery Order filed by the parties on July 20, 2005 (Doc. 122) and the Motion to compel filed

by the Plaintiffs on August 8, 2005 (Doc. 134).  For the reasons set forth below, the motion to

extend is **GRANTED** and the motion to compel is **GRANTED IN PART, DENIED**

**WITHOUT PREJUDICE IN PART, and TAKEN UNDER ADVISEMENT IN PART**.

### BACKGROUND

    The Plaintiffs have filed a putative class action involving an alleged practice of the

Defendant, AT&T, of billing persons, who are not customers, various fees, tolls, and charges for

long-distance phone service.  In the Plaintiffs' second amended complaint, filed on April 1, 2005

(Doc. 74), the Plaintiffs specifically allege violations of the Communications Act of 1934, 47

U.S.C. §151, *et seq.*, the Illinois Consumer Fraud Act, 815 ILL. COMP. STAT. §505, *et seq.*, and

the Illinois Uniform Deceptive Trade Practices Act, 815 ILL. COMP. STAT. §510, *et seq.*

Pursuant to District Judge David R. Herndon's February 8, 2006 order, the current posture of this

case is as follows: The second amended complaint asserts a number of individual claims and

purported class claims.  This purported class includes individuals who were not customers of the

Defendant but who were assessed recurring charges and fees by the Defendant.  Specifically, the

Plaintiffs identify the class as:

> All persons who, on or after August 14, 1999, were assessed
> charges other than charges incurred by dialing an access code to
> reach the AT&T network, for service on a telephone line that was
> not presubscribed to AT&T during the billing period in question.

> (Second Amended Complaint, ¶12)

None of the class allegations have been dismissed; however, they also have not been considered

by the Court as there is no pending motion to certify a class.[1]  There are seven distinct individual

claims.  With respect to the individual Plaintiffs, all of Edward Bennan's, Kathleen

Mittelsteadt's, and Suzanne McGee's claims remain pending.  All of Deane Stokes Jr.'s claims,

---

[1] This case has had a uniquely extended and involved history.  The complaint was filed
on June 22, 2004 (Doc. 1).  An amended complaint was filed on July 26, 2004 (Doc. 6).  The
Plaintiffs filed a motion to certify the class on August 11, 2004 (Doc. 12).  After two extensions,
the Defendant filed a motion to dismiss on October 13, 2004 (Doc. 45).  The case was assigned
to Track D and a presumptive trial month of April, 2006 was set (Doc. 53).  A scheduling order,
entered on November 24, 2004, set a briefing schedule for the class certification motion to begin
on May 20, 2005 (Doc. 59).
       On March 1, 2005, Judge Herndon ruled on the pending motions to dismiss and mooted
the pending motion to certify class (Docs. 70 and 71).  The Plaintiffs filed a second amended
complaint on April 1, 2005 (Doc. 74) which resulted in a second round of motions to dismiss
(Docs. 85, 96, 108).  The schedule in this case also was extended, by a May 18, 2005 order, such
that the Plaintiffs' class certification motion was due on August 18, 2005 and the presumptive
trial date was reset for July, 2006  (Doc. 90).  While the motions to dismiss were pending, the
parties sought another extension in the schedule and this discovery motion was filed (Doc. 122
and 127).  The motion for extension of time was taken under advisement in light of this pending
discovery dispute and the pending motions to dismiss and compel arbitration (Doc. 138).
       As indicated above, Judge Herndon has ruled on the motions to dismiss and the
Defendant has filed an answer to the second amended complaint on March 15, 2006 (Doc. 162).
As no further motions are pending that would prevent the filing of a motion for class
certification, this case is now ripe for a new briefing schedule to be discussed below.

except for Count III, remain pending.  And, only Count VI of Annie Crawford's claims remains pending.

The present motion to compel concerns discovery requests related to class certification only.  In December, 2004, the Plaintiffs served their first requests for production of documents and their first interrogatories.  AT&T provided responses on January 25, 2005 in which it raised a number of "general" and specific objections to the discovery requests.  The Plaintiffs' motion seeks an order compelling responsive documents to requests 9, 10, 12, 14, 19-23, 33, and 40 and interrogatories 7, 8, 10, 11, 15, and 22-24.

The parties also seek an extension in the schedule in this case in light of the on-going discovery dispute.  This matter currently is set for the presumptive trial month of July, 2006 (Doc. 91).  As of the date of this order, all deadlines contained in the Joint Report submitted by the parties on November 22, 2004 (Doc. 59) and extended by Magistrate Judge Philip M. Frazier in a May 18, 2005 order (Doc. 90) have elapsed.

DISCUSSION

**Motion to Compel**

The Defendant's initial argument is that the Plaintiffs have failed "to articulate any viable class claim that would warrant the burden they seek to impose from [sic] AT&T" (Response p. 7).   Each of the named Plaintiffs assert that they have had a similar experience: they were charged by AT&T for long distance services that they did not authorize and for which AT&T collected payment which it did not meaningfully refund and that AT&T continues to assess unauthorized charges for which it demands payment.  The Plaintiffs allege that these practices violate federal and state law.  The second amended complaint further asserts that Federal Rule of

3

Civil Procedure 23's requirements have been met.[2]

The issue of whether the Plaintiffs can properly assert a class action pursuant to Rule 23 is before District Judge Herndon.  The only issue that is before this Court is whether the discovery that is sought, prior to class certification, is reasonable in light of the Federal Rules.  The Defendant has offered *no* argument that the Plaintiffs are required to assert, in the second amended complaint, details beyond those required by Rule 8(a).

As an initial matter, the type of class claims asserted by the Plaintiffs will necessitate extensive discovery.  The Plaintiff anticipates that the class could include over 800,000 people (See Second Amended Complaint at ¶14).  The claims of these potential class members, while simply stated above, will implicate hundreds of thousands of records that are in the control of the Defendant: in fact, each of these records are in the *exclusive* control of the Defendant.  The Defendant, presumably, maintains files on each of the persons (who could be class members) both in paper and in electronic form.  Based on the affidavits attached to the Defendant's Response to the Motion to Compel (hereinafter "Response"), such information is contained in hundreds of boxes and electronic databases that are extremely large.  In addition, the information maintained by the Defendant is not necessarily maintained in a manner that would allow for an easy or swift response to the Plaintiffs' interrogatories and document requests.

Thus, on the one hand, the Plaintiffs are entitled to enough discovery to allow them to support a motion for class certification.  The Plaintiffs can only acquire most of this discovery from the Defendant.  The discovery requests necessarily will require a certain amount of cost on

---

[2] Rule 23 requires, among other things, numerosity, commonality, typicality, and superiority of the class.

the Defendant in terms of manpower and time.  This cost is above and beyond what would be

required in an ordinary civil action filed in federal court.  On the other hand, the Defendant is not

required to participate in discovery that will be *unduly* burdensome and oppressive.  The

Defendant is not required to turn over all of its documents or spend months attempting to

compile information in a manner that the Plaintiffs request.  Thus, this Court makes the

following rulings in light of, and with the awareness of, these competing interests.

**Interrogatories 7, 8, 10, 11, 15, 22-24.**

Federal Rule of Civil Procedure 26(b)(1) provides: "Parties may obtain discovery

regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . .

Relevant information need not be admissible at the trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence."  With respect to interrogatories,

Federal Rule of Civil Procedure 33(b)(1) further provides:

> Each interrogatory shall be answered separately and fully in
> writing under oath, unless it is objected to, in which event the
> objecting party shall state the reasons for objection and shall
> answer to the extent the interrogatory is not objectionable.

Rule 26(b)(2) provides that discovery may be limited for a number of reasons including: that the

discovery is cumulative, that the requesting party can acquire the discovery from a more

convenient source, that the discovery is unduly burdensome and that the cost outweighs the

benefits.  In this respect, the Court may take into account the "the amount in controversy, the

parties' resources, the importance of the issues at stake in the litigation, and the importance of

the proposed discovery in resolving the issues."  This Court has "broad discretion over discover

matters."  Spiegla v. Hull, 371 F.3d 928, 944 (7th Cir. 2004).

The Defendant's responses to these interrogatories begins with a "general statement."

5

Neither the Federal Rules nor the Local Rules recognize the filing of any statement in response to interrogatories.  The Federal Rules and the Local Rules only require an answer and/or objection.  Therefore, this Court will not consider this "General Statement" as being responsive to any of the interrogatories.

The Defendant next offers 19 "general objections."  General objections are completely unhelpful in determining whether a specific interrogatory is objectionable.  See Melzoni v. American Drug Stores, Inc., 2005 WL 2099810, *6 n.3 (S.D. Ind. 2005) (stating "[o]bjections to responding to discovery should be direct and to the point and not made for the obvious purpose of trying to allow a watered down response to continue to muddy the facts and circumstances surrounding relevant issues") For example, general objection 3 merely restates Rule 26(b)(1) and general objection 6 purports to withhold privileged information without the benefit of a privilege log.  Whether or not an interrogatory seeks irrelevant information is unique to that interrogatory. Indicating that some or all of the interrogatories seek irrelevant information does not assist the Court in determining such an issue.  Also, generally asserting that certain information may be protected by a privilege, be it work-product or attorney-client, without providing a privilege log is unhelpful in determining whether such information is protected by a privilege.   Therefore, as none of the objections made after each interrogatory specify which general objection applies, the Court will only consider the specific objections made after each interrogatory and the arguments made in the Defendant's Response.

Interrogatory 7 states: "IDENTIFY each type of RECURRING CHARGE assessed by AT&T."  In its "specific objection to interrogatory 7," the Defendant refers to its 19 general objections.  In its Response, the Defendant states "AT&T has already provided Plaintiffs

6

documents that identify the charges that AT&T assesses its residential customers.  AT&T is not

required to comb through all of these records to compile such a list."  Presumably, then, the

Defendant objects to the burdensomeness of this interrogatory.  This interrogatory merely seeks

a list of recurring charges that AT&T assesses.  It does not seek documents.  It cannot be unduly

burdensome for AT&T to list out which recurring charges, i.e. charges that are not one-time

only, that are contained in bills sent to consumers.  As the Plaintiffs have limited the time period

from January 1, 2001 to the present, and the definition contained in the interrogatories limits the

term "recurring charges," this interrogatory cannot be unduly burdensome.  The Defendant

**SHALL** answer this interrogatory.

Interrogatory 8 states: "IDENTIFY all codes used in YOUR residential billing systems,

including the residence account maintenance program ("RAMP"), that refer to RECURRING

CHARGES."  In its answer, the Defendant incorporates its general objections and states that the

interrogatory is vague and ambiguous with respect to the term "code."  The Court assumes that

this interrogatory seeks to discover the shorthand reference to the recurring charges listed in

interrogatory 7 that is contained in various computer programs that the Defendant uses for

billing.  With this assumption in mind, the interrogatory is neither vague nor ambiguous.  The

Defendant **SHALL** answer this interrogatory.

Interrogatory 10 states: "IDENTIFY all analyses YOU performed concerning billing

errors, including imposition of AT&T RECURRING CHARGES for services which, at the time

the RECURRING CHARGES were assessed, AT&T was not the CARRIER OF RECORD.  In

its answer, the Defendant refers to the general objections and indicates that this interrogatory is

overbroad (in its Response), vague, and ambiguous with respect to "analyses" and "billing

errors" in particular.  This interrogatory, as written, is vague and overbroad.  The interrogatory

seeks information concerning *all* billing errors which would, conceivably, implicate every

AT&T customer who has had a problem with their bill.  As such, an answer to this interrogatory

will not be compelled.

Interrogatory 11 is: "State the total number of PERSONS[3] or entities in the United States

for each year during the CLASS PERIOD who (a) were assessed or say they were assessed

AT&T RECURRING CHARGES for services for which, at the time of assessment, AT&T was

not the CARRIER OF RECORD, and (b) paid such charges; (c) paid such charges and

subsequently received refunds for the full amount of such charges; (d) paid such charges and

subsequently received refunds or credit for a partial amount of such charges; (e) paid such

charges and subsequently received credit for the full amount of such charges; and (f) did not pay

such charges."  In its answer, the Defendant states the interrogatory is "compound and

conjunctive," violates Rule 33(a), is unintelligible, burdensome, and seeks irrelevant material.  In

---

[3] The Defendant generally objects to the Plaintiffs' definition of "persons" which
includes corporations, partnerships, etc., in addition to natural persons.  In addition, the
Defendant objects to the definitions of other terms that the Plaintiff has included in its
interrogatories.  The Defendant cites to no case authority that would allow it to arbitrarily narrow
a definition to one that it finds acceptable.  However, contrary to the Plaintiffs assertion on page
7 of their motion (the Court uses the pagination generated by the CM/ECF system and not the
page numbers listed by the parties) the Plaintiffs are listed as individuals, not as small
businesses.  The second amended complaint makes no jurisdictional statement with respect to
any of the Plaintiffs that would imply that they are proceeding as corporations or other entities.
The Plaintiffs do state, in paragraph 49 of the second amended complaint, that Deane Stokes,
Jr.'s phone line is used for business purposes; however, this Plaintiff is also listed as an
individual and not as a corporation or other entity.  This limited allegation cannot implicate all of
the Defendant's corporate clients.  Allowing such wide-ranging discovery based on this one
paragraph in the second amended complaint would indeed result in a fishing expedition that
would be unduly burdensome on the Defendant.  As such, the Court agrees with the Defendant
that the term "person" includes only natural persons.   The Court will accept the other definitions
provided by the Plaintiffs which do not appear, on their face, to be unreasonable.

addition, the Defendant, in its Response, refers to various attached affidavits which state that the Defendant does not keep records in a manner that would lead to the ready and easy identification of consumers in the categories that the Plaintiffs seek.

In a related vein, Interrogatory 15 is: "State the total dollar amount of RECURRING CHARGES for each year during the CLASS PERIOD that AT&T collected from PERSONS or entities in the United States for which, at the time of assessment or charge, AT&T was not the CARRIER OF RECORD."  In its answers, the Defendant offers a litany of objections ranging from the definitions of words to harassment. In its Response, the Defendant indicates that such information is not tracked "in the regular course of its business" and that it would be burdensome to produce.

These interrogatories essentially seek the identities of class members – those non-customers who were billed by AT&T for various recurring charges – and the potential total amount of damages that may be imposed on the Defendants.  It appears that the Defendant would have to go through each customer file, from January 1, 2001 to the present, to learn whether an improper recurring charge was assessed in order to come up with a "total" number of persons and the total dollar amount of charges.  On its face, this appears burdensome.  Indeed, the declarations of Christopher S. Timmermans and Robert Boberly both note, generally, that the Defendant does not maintain files in a manner that would allow them to search for the information requested in these two interrogatories.  The Plaintiffs do not offer any response to the unduly burdensome argument made by the Defendant.  While there can be no doubt that this information is relevant to the class claims, the Court will not compel an answer, at this time, in light of the showing made by the Defendant.  The Court can only guess at how long it would

take an employee of the Defendant to go through each file for each consumer to determine if they were improperly charged and by how much.  However, the Court will re-evaluate this conclusion if the Plaintiffs can indicate whether this information can be ascertained without unduly burdening the Defendant.

Finally, interrogatories 22-24 seek the disclosure of all governmental, administrative, or regulatory inquiries or complaints regarding the types of charges of which the Plaintiffs complain.  In its answer, the Defendant states that these requests are ambiguous and that a response may violate various confidentiality agreements.  In its Response, the Defendant further indicates that such information can be obtained by the Plaintiffs, themselves, as the agencies that regulate the Defendant are commonly known.  These interrogatories are not ambiguous, especially if the Defendant gives the terms their ordinary and common meaning, and are not burdensome given the January 1, 2001 start date.  It would be less burdensome for the Defendant to provide a list of all investigations, inquiries, court actions, and administrative actions regarding recurring charges, than for the Plaintiffs to scour through the records of regulatory bodies, the courts, and administrative bodies in search of filings made against the Defendant. While these records may be publically available, the cost to the Defendant to at least identify, by case number or some other searchable number, such actions is *de minimis*.  However, the resolution of any such complaints, cases, or actions can be determined by a review of the records.  Such a review can be conducted by the Plaintiffs once they know where to look. Therefore, the Defendant **SHALL** answer interrogatories 22 and 23.[4]  However, as the Plaintiffs

---

[4] With respect to the confidentiality issue, the Court assumes that public records are public and accessible.  Even if the specifics of an inquiry or case or investigation are covered by a confidentiality agreement, the Defendant can at least provide that information which is not

can determine for themselves how inquiries, cases, or complaints have been resolved,  the

Defendant is not required to answer interrogatory 24.

**Requests for Production of Documents 9, 10, 12, 14, 19-23, 33, and 40**

Federal Rule of Civil Procedure 34 governs the production of documents.  Rule 34(a)

states that a party may request to inspect and/or copy designated documents "which are in the

possession, custody, or control of the party upon whom the request is served."  Rule 34(b) states:

"The request shall set forth, either by individual item or by category, the items to be inspected,

and describe each with reasonably particularity."  The Rule goes on to states that "A party who

produces documents for inspection shall produce them as they are kept in the usual course of

business or shall organize and label them to correspond with the categories in the request."  On

pages 3 and 4 of the Response, the Defendant indicates that it has turned over a variety of

documents that may be responsive to the Plaintiffs' discovery requests.  Surprisingly, neither

party specifies to which production request any of these documents are responsive.

The answers to Request 9, 10, 12, 14, 19, 20, 21, and 23 indicate, in addition to various

objections, that the Defendant will serve responsive documents on a "rolling" basis.  In their

motion, the Plaintiffs state that no such responsive documents have been provided, rolling or

otherwise.  The Defendant, on the other hand, indicates that some documents have been

provided.  As such, there appears to be a conflict between what the Defendant states it has

provided and what the Plaintiffs state has been received.  It is wholly unclear what documents

have been produced, when, and to which production request they are responsive.  This Court

cannot test the veracity of the statements of either party without a hearing on the matter and/or a

---

covered such as the case number and before whom the matter was filed.

review of what AT&T has provided, as indicated in its answers to these requests.

Therefore, given the conflict in the record, the number and level of objections to these discovery requests, the number of documents that the Defendant contends it will have to produce, and the assumption that this discovery dispute has not been resolved by the parties, this Court will entertain this discovery dispute through a formal evidentiary hearing.  At this hearing, the Court expects the parties to produce the documents that have been exchanged, to produce the persons who are responsible for responding to the discovery requests, and to be prepared to discuss, in detail, the extent of any outstanding document production.  The parties shall also be prepared to inform the Court of the exact time and expense that these discovery requests will entail.[5]  The Court respectfully requests that the Plaintiffs, in making their requests and arguments, take into account the burden that will be imposed upon the Defendant in producing the millions of documents and gigabytes of data that it anticipates will be necessary.  The parties shall also be prepared to discuss how the cost of this discovery can be partitioned or equitably assessed between the parties.

To assist in the scheduling of the hearing, the parties **SHALL** indicate to the Court, no later than April 15, 2006:

1.  Which production requests remain outstanding.  The parties shall list the production requests, the date(s) that responsive documents have been served in response (if any) and a *brief* description of the types of documents tendered.

2.  How many days this Court should set aside for the hearing.  The parties are

---

[5] In the event that there are other discovery disputes that are not resolved by the this order, the parties should also be prepared to discuss those matters.

informed that because of the Court's already busy schedule, the hearing may not
be set for consecutive days.

3.  How many witnesses they intend to present, the anticipated length of their
testimony, and the matters upon which they will testify.

4.  How many boxes of documents they intend to bring to the hearing.  To assist
the Court, the parties shall label the boxes in relation to the document request to
which they are responsive.

**Motion for Extension of Time**

In light of the ongoing discovery dispute and the recently filed answer, this motion is
**GRANTED**.  The parties shall submit an amended Joint Report of Parties (Class Action) based
on a new presumptive trial month of September, 2007 by **April 15, 2006**.  The parties are
reminded to use the form contained in the Local Rules and to sign and date the document.  Also,
the District Court will require at least 100 days to consider the class certification motion prior to
a ruling.  If the parties cannot reach an agreement as to the dates, they shall promptly inform
chambers.

**CONCLUSION**

For the foregoing reasons, the Agreed Motion to Extend Scheduling and Discovery Order
filed by the parties on July 20, 2005 is **GRANTED** (Doc. 122) and the Motion to compel filed
by the Plaintiffs on August 8, 2005 is **GRANTED IN PART, DENIED WITHOUT
PREJUDICE IN PART, and TAKEN UNDER ADVISEMENT IN PART** (Doc. 134).

The parties shall submit an amended Joint Report of Parties (Class Action) by **April 15,
2006**.  The motion to compel is **GRANTED** with respect to interrogatories 7, 8, 22, and 23,

13

**DENIED WITHOUT PREJUDICE** with respect to interrogatories 10, 11, 15, and 24, and

**TAKEN UNDER ADVISEMENT** with respect to the requests for production of documents.

The Defendant **SHALL** respond to interrogatories 7, 8, 22, and 23 by **May 1, 2006**.  This Court

will schedule an evidentiary hearing after the parties have supplied the necessary information

listed above no later than **April 15, 2006.**


**DATED: March 29, 2006**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**

14