IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**EDWARD BRENNAN, ANNIE CRAWFORD, and DEANE STOKES, JR., on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**AT&T CORP., a New York Corporation,**

**Defendant.**                                                             **No. 04-CV-433-DRH**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

### I. Introduction

Before the Court is a motion submitted by Defendant AT&T ("Defendant") to compel arbitration and to dismiss as to Plaintiffs Edward Brennan and Suzanne McGee. (Doc. 185.) Defendant asserts that Plaintiffs Edward Brennan and Suzanne McGee were AT&T customers, as defined by AT&T's customer service agreement, and therefore bound by the arbitration provision therein. For the following reasons, Defendant's motion is **DENIED**. (Doc. 185.)

On June 22, 2004, Cheryl Hall, on behalf of others similarly situated, brought an action against Defendant alleging unjust enrichment, money had and received, and various statutory violations related to Defendant's allegedly unfair

billing practices.  (Doc. 1.)  Plaintiffs amended their complaint slightly more than a month later and added Loretta Sanford, Sandra Wiles, and Annie Crawford as named Plaintiffs. (Doc. 6.) On March 1, 2005 the Court granted in part and denied in part Defendant's first motion to dismiss, dismissing Plaintiffs Cheryl Hall and Sandra Wiles. (Docs. 70, 71.) Plaintiffs then filed a seven-count second-amended complaint, adding named Plaintiffs Edward Brennan, Kathleen Mittelsteadt, Suzanne McGee, and Deane Stokes, Jr., and dropping Lorretta Sanford.  (Doc. 74.)  In response, Defendant filed various motions, including a motion to dismiss (Doc. 85) and a motion to compel arbitration and dismiss (Doc. 96).  On February 8, 2006, the Court granted in part and denied in part Defendant's motion to dismiss, dismissing Counts I-V and Count VII of Annie Crawford's action and Count III of Stoke's action. (Doc. 161.)  In addition, the Court denied at the time Defendant's motion to compel arbitration and dismiss, finding that additional facts were required to support these motions. (Doc. 161.) Subsequently, Defendant filed the present motion to compel arbitration as to Plaintiffs Edward Brennan and Suzanne McGee. (Doc. 185.) Plaintiffs responded in opposition (Doc. 187) and Defendant filed a reply in support of the motion (Doc. 188).

       Following the filing of Defendant's motion to compel arbitration, Plaintiffs filed a motion for leave to file a third amended complaint. (Doc. 191.)  The Court granted this motion. (Doc. 219.)  Plaintiffs' third amended complaint withdraws the claims of named Plaintiffs Suzanne McGee and Kathleen Mittelsteadt without prejudice.   The third amended complaint alleges violations of the

**Communications Act of 1934, as amended, 47 U.S.C. §§ 151, et seq**. ("Communications Act") (Counts I and II); violation of the **Illinois Consumer Fraud Act, 815 ILCS 505 et seq**., and similar laws in other states (Count VI); violation of the **Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510, et seq**., and similar laws in other states (Count V); for unjust enrichment (Count III) and for money had and received (Count IV). The third amended complaint also redefines the putative class as: "All persons who were charged the Basic schedule $3.95 MRC by AT&T on or after January 1, 2004 and did not use AT&T telecommunication services at any time on or after August 1, 2001."

## II. Motion to Compel Arbitration and Dismiss (Doc. 185)

### A. Legal Standard

Defendant moves to compel arbitration as to Plaintiffs Brennan and McGee on the ground that these Plaintiffs were AT&T customers at the time of the alleged injuries, and therefore their claims are subject to arbitration. (Doc. 185, p. 1.) Plaintiffs respond that Brennan and McGee were not AT&T customers when they were injured, and therefore that arbitration is inappropriate. In light of Plaintiffs' third amended complaint, which withdraws the claims of Plaintiff Suzanne McGee, the portion of Defendant's motion to compel arbitration that addresses McGee's claims is **DENIED AS MOOT**. Therefore, this Order will only address whether Plaintiff Brennan was a customer of AT&T at the relevant times and, therefore, must arbitrate his claims.

There is little doubt that if Plaintiff Brennan contractually agreed to submit all his disputes with AT&T to arbitration, then he is bound by that agreement and must pursue his claims through arbitration. *See **Boomer v. AT&T Corp.**, 309 F.3d 404 (7th Cir. 2002); see also **Gilmer v. Interstate/Johnson Lane Corp.**, 500 U.S. 20, 35 (1991)*. Absent an agreement to arbitrate, however, arbitration cannot be compelled. ***Matthews v. Rollins Hudig Hall Co.**, 72 F.3d 50, 53 (7th Cir. 1995); **Farrand v. Lutheran Bhd.**, 993 F.2d 1253, 1255 (7th Cir. 1993)* (citing ***AT&T Techs., Inc. v. Communications Workers**, 475 U.S. 643 (1986))*; ***Adamovic v. METME Corp.**, 961 F.2d 652, 654 (7th Cir. 1992)*. Thus, the issue here is whether Plaintiff Brennan entered into a valid arbitration agreement with Defendant.

Defendant continues to rely on ***Boomer*** in support of its argument that Brennan must arbitrate his claims. In ***Boomer***, the Seventh Circuit found, under Illinois law, that an individual in Illinois to whom AT&T sent a customer service agreement ("CSA")[1] with an arbitration provision agreed to the arbitration provision by the act of using AT&T's services, because the document clearly indicated that

---

[1] The CSA states:

**IT IS IMPORTANT THAT YOU READ THIS ENTIRE SECTION CAREFULLY. THIS SECTION PROVIDES FOR RESOLUTION OF DISPUTES THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY OR THROUGH A CLASS ACTION.**

(Doc. 186, p. 7.)

acceptance can be accomplished by those means. ***Boomer*, 309 F.3d at 414-17**. In other words, the court found that the CSA was an offer that was accepted by the consumer's act of using AT&T's services. *Id.* At this point, there is no real dispute that the CSA contains a valid, enforceable arbitration clause that applies to all AT&T customers. The question, instead, is whether Brennan was in fact an AT&T customer. In the prior motion to compel arbitration (Doc. 96), the Court held that it was unclear whether the named Plaintiffs were actually AT&T customers at the time the CSA was sent and thereafter. This time around, Defendant attempts to offer even more evidence in support of its contention that Brennan was, in fact, an AT&T customer at the relevant times.

Defendant argues that Plaintiffs bear the burden of demonstrating that the arbitration clause is invalid based upon ***Green Tree Fin. Corp.-Alabama-Randolph*, 531 U.S. 79 (2000)**. In that case, the United States Supreme Court held that the party resisting arbitration bears the burden "of proving that the claims at issue are unsuitable for arbitration" and "of establishing that Congress intended to preclude arbitration of the statutory claims at issue." ***Id.* at 90.** On the other hand, Plaintiffs assert that the "party moving to compel arbitration bears the burden of showing an enforceable arbitration agreement" based upon ***Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997).** Federal courts must "look to the state law that ordinarily governs the formation of contracts" when deciding whether a valid arbitration agreement exists. *Id. **Gibson*** is based upon Indiana state

law. The Court is unaware of any Arizona case[2] that addresses the question of who bears the burden of proving that a valid arbitration agreement exists; however, the Court finds that an Illinois case reasonably addresses the dispute: "The party seeking to compel arbitration has the burden of proving that an arbitration agreement exists and that the claims are raised within the agreement's scope. If an arbitration agreement is valid, the party opposing the agreement has the burden of defeating it." ***Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121, 359 Ill. App. 3d 976, 983 (2005) (citations omitted).** Likewise, the Court finds that AT&T bears the burden of proving that an arbitration agreement actually existed between the parties. Only then would the burden shift to the Plaintiffs to prove that even though a valid arbitration agreement existed between the parties, they nonetheless should not be compelled to arbitrate.

**B. Analysis**

To determine whether Brennan was an AT&T customer and therefore bound by the terms of the arbitration provision contained within the CSA, the Court looks to the terms of the CSA. The CSA defines who is bound by the terms of the CSA: "BY ENROLLING IN, USING, OR PAYING FOR THE SERVICES, YOU AGREE TO THE PRICES, CHARGES, TERMS AND CONDITIONS IN THIS AGREEMENT." (Doc. 187, p. 10.) AT&T maintains that Brennan received the CSA as a stand-alone

---

[2] Brennan was an Arizona resident and it was Brennan's Arizona residence that was assessed charges by AT&T. See the February 8, 2006 Order for a discussion of the state law that should apply in this case. (Doc. 161, p. 22-23, fn.11 and 12.)

mailing. (Doc. 186, p. 11.)  AT&T asserts that "the CSA Mailing was received by Brennan" based on the declaration of Ellen Reid, Director of Strategic Pricing and Regulatory for AT&T Consumer.  Ms. Reid stated in her declaration that a "review of the Returned Mail List shows that the CSA Mailing sent to the attention of Mr. Brennan has not been returned to AT&T." (Reid Decl., ¶ 14.)  Brennan counters that he does not recall receiving the CSA Mailing, but concedes that he does not read every piece of mail that he receives.  Silence may constitute acceptance.  "Where a letter is properly addressed and mailed, there is a 'presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." ***Boomer*****, 309 F.3d at 415, fn. 5.**  Without evidence to the contrary, the Court will presume that Brennan received the CSA. ***Id.***

### *a.     Enrollment*

According to Brennan, on or about January 13, 1994, Brennan selected AT&T as his long-distance carrier for his Arizona residence.  Brennan cancelled his AT&T long-distance services a few months later after AT&T raised its rates. (Doc. 187, p. 5.)  Brennan maintains that he never re-enrolled with AT&T but rather used "10-10" or "dial around" numbers to place long-distance calls. (*Id.*)   Plaintiffs essentially make two arguments on this point: 1) that AT&T erroneously continued Brennan's enrollment in its long-distance service plan; and 2) that even if Brennan continued to be enrolled based on his enrollment in 1994 that by the explicit terms of the CSA, a person is only bound by the terms of the CSA "by enrolling in, using,

or paying for the services." (*Id*. at 10.)  Therefore, Plaintiffs argue, *continued* enrollment without using or paying for AT&T services is not enough to bind Brennan to the arbitration provision contained in the CSA.

AT&T maintains that Brennan was a customer because it received information from Qwest, Brennan's local exchange carrier ("LEC"), indicating that Brennan had an active account with AT&T. Plaintiffs counter that AT&T relied solely on information received from Qwest, despite knowing that customer data received from Qwest was unreliable. (Doc. 187, p. 12.)

In addition, AT&T argues that during a number of communications between Brennan and AT&T's customer service representatives, Brennan never claimed that he was not an AT&T customer. (Doc. 186, p. 13.)  Plaintiffs argue that Brennan attempted several times to contact AT&T to complain about the unauthorized charges, but was put on hold for "40, 45 minutes at a time" and eventually would hang up.  Plaintiffs argue this was a typical occurrence for persons erroneously billed by AT&T and that AT&T was aware of the problem. (Doc. 187, p. 13.)  Furthermore, Plaintiffs assert that Mr. Timmerman, AT&T's staff manager of the executive complaints department, reviewed the customer service representative ("CSR") notes and concluded, in Plaintiffs' words that "AT&T understood Mr. Brennan to claim that he was not a customer." (*Id*. at 13.)  It is not so clear to the Court from its review of Mr. Timmerman's deposition that this was in fact his impression from all of the notes and records; however, it does appear to have been his impression from at least one communication Brennan had with a CSR.

Nevertheless, the fact that the notes do not contain any reference to Brennan's belief that he was not an AT&T customer does not prove that he was indeed a customer.

### b.   *Use*

There is no dispute that Brennan never used AT&T's long-distance services after 2001 and Brennan asserts that AT&T has offered no proof that Brennan ever used AT&T after 1994. (*Id.*, p. 9.) AT&T maintains that Brennan was a customer regardless of whether he actually used its long-distance services - the mere fact that Brennan was allegedly enrolled as a customer and *could* utilize AT&T's services was enough to make him a customer. Setting aside this argument, it seems undisputed that Brennan never **used** AT&T long-distance services during the applicable time period.

Furthermore, the Court finds it difficult to believe that Brennan intended to be enrolled in AT&T long-distance services. The fact that he never made any calls using AT&T since at least 2001 (and probably even much longer than that) coupled with the fact that he always used a dial-around service leads the Court to believe that if he were enrolled, it was due to some technical glitch on the part of AT&T or Qwest. This hardly seems sufficient.

### c.   *Payment*

In 2004, Brennan says he began to notice charges from AT&T, specifically a monthly recurring charge ("MRC") and other associated regulatory and

service fees, despite not having a single charge for any long-distance telephone calls through AT&T. (*Id*.)  He mistakenly paid the charges in February 2004, but immediately requested a credit for that payment on February 20, 2004.  AT&T did in fact credit him for that payment in March 2004.  The charges continued for about one year during which time Brennan withheld payment from Qwest, his LEC, and attempted to resolve the charges with AT&T.  Brennan stated in his deposition that "the reason I didn't pay it is that I didn't request the service and I never used the service.  There's not one phone call on AT&T in all those months."  Eventually, Brennan disconnected telephone service and sold his residence in Arizona.  At that time, he paid the AT&T charges, he claims, to avoid damage to his credit. (*Id*. at 6.)  Plaintiffs claim that to require Brennan to arbitrate his claims because he paid AT&T to avoid damage to his credit would be inequitable.  The Court agrees.  Clearly Brennan ardently resisted paying for the services because he did not believe he was an AT&T customer.  It would be unfair to bind Brennan to the arbitration agreement simply because he eventually caved in and paid the relatively small fees in an effort to protect his credit after unsuccessfully attempting for a year to fight the charges.  The Court refuses to find that this payment, which was essentially coerced, made Brennan a customer.

It is important to note that the Plaintiffs in ***Boomer*** actually **used** AT&T services.  Therefore, there was no question that they were bound by the agreement.  The facts in this case are obviously distinguishable.  Clearly, Brennan never used AT&T long-distance services.  It is highly questionable whether Brennan was even

enrolled in AT&T long-distance services. AT&T presents no conclusive evidence on this issue other than the customer data information sent from Qwest, an LEC that AT&T knew provided unreliable information. Brennan did eventually pay for the charges assessed by AT&T. However, the fact that he withheld payment for so many months and repeatedly contacted AT&T"s customer service representatives to complain indicates that he did not pay willingly. For these reasons, the Court finds that Brennan was not an AT&T customer at the time the alleged injury arose. Therefore, Brennan is not required to arbitrate his claims.

### III. Conclusion

In conclusion, the Court **DENIES** Defendant's motion to compel arbitration and to dismiss as to Plaintiff Edward Brennan and **DENIES AS MOOT** the motion as it pertains to Suzanne McGee. (Doc. 185.)

**IT IS SO ORDERED.**

**Signed this 2nd day of August, 2007.**

/s/         David    RHerndon
**United States District Judge**